JESS R. MARCHESE, ESQ.
Nevada Bar # 8175
601 N. Rancho Drive, B-14
Las Vegas, NV 89106
(702) 385-5377 (P) (702) 552-2762 (F)
marcheselaw@msn.com
Attorneys for Defendant- **HOUSLEY**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| UNITED STATES OF AMERICA, | Case No. 2:22-cr-00160-APG-NBW-1 |
|---|---|
| Plaintiff, | |
| vs. | |
| CHRISTOPHER S. HOUSLEY, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| Defendant. | |

**Certificate of Timely Filing: This memorandum is timely filed.**

    COMES NOW, the Defendant, CHRISTOPHER HOUSLEY ("Defendant" or "Mr. Housley by and through his attorney of record, JESS R. MARCHESE, ESQ., and respectfully submits this Sentencing Memorandum, urging this Court to sentence him to a term of probation with home confinement.

    DATED this 28th day of February, 2024.

/s/ Jess R. Marchese, Esq.
JESS R. MARCHESE, ESQ.
Attorney for Defendant HOUSLEY

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Procedural Background

On December 13, 2022, Mr. Christopher Housley was charged by way of Second Superseding Indictment with the following: Count One with Distribution of a Controlled Substance Causing Death, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C), that occurred on or about May 20, 2021; Counts Two and Three charged Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C), that occurred on or about August 18, 2021, and October 25, 2021, respectively; Count Four charged Possession with Intent to Distribute a Controlled Substance - Tapentadol, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C), that occurred on or about May 3, 2022. Count Five charged Possession with Intent to Distribute a Controlled Substance - Alprazolam, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C), that occurred on or about May 3, 2022; Count Six charged Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), that occurred on or about May 3, 2022; Counts Seven through Twenty-Six charged Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 1956(B)(i), that occurred from a time unknown but no earlier than July 2021, and continuing up to and including on or about May 3, 2022 and Counts Twenty-Seven through Thirty charged Money Laundering in violation of 18 U.S.C. § 1957, that occurred from on or about September 2021, through on or about January 2022. *See* ECF No. 35.

On October 11, 2023, Mr. Housley accepted responsibility and entered a guilty plea to Counts four and seven through twenty-six (ECF No. 52). Within the Plea Agreement, the base offense level for count four pursuant to USSG 2D1.1(c)(3) is 34, with an enhancement for possessing a firearm (+2) for an adjusted offense level of 36 (ECF No. 52 p. 9). The Guilty Plea

Agreement proscribes the base offense level for counts 7-26 as 34 pursuant to USSG 2S1.1(a)(1) with an enhancement for an 18 USC 1956 conviction (+2) and an enhancement for sophisticated laundering (+2), for an adjusted offense level of 38 (ECF No. 52 p. 9-10). After grouping, the Presentence Report finds the total adjusted offense level to be 42 (PSR p. 18). However, considering Mr. Housley's acceptance of responsibility (-3), the total offense level is 39 (PSR p. 18).

According to the Plea Agreement, the Government will recommend that the district court impose a sentence at the low end of the advisory guideline range as determined by the district court. Mr. Housley may argue for a downward departure or variance from defendant's offense level or criminal history category (ECF No. 52 p. 11). The parties also stipulate that defendant be fined $68,000 and forfeit $132,000 which constitute proceeds of his drug trafficking and money laundering activities as charged in the indictment and as relevant conduct (ECF No. 52 p. 11).

The Presentence Report finds Mr. Housley to have a criminal history score of 1, resulting in criminal history category I (PSR p. 22). The Presentence Report finds the guideline range to be 262-327 months (PSR p. 39). The Presentence Report recommends Mr. Housley be sentenced to 240 months for counts 4 and 7-25, concurrent, and 22 months for count 26, consecutive to all other counts, for an aggregate total sentence of 262 months (PSR p. 39).

Sentencing is presently scheduled for January 30, 2024 (ECF No. 51).

## II. Facts of the Offense

In July of 2020, DEA investigators received information that Mr. Housley was manufacturing and distributing narcotics in Las Vegas, Nevada (PSR p. 6). In January of 2021, seventeen parcels destined for an address associated with Mr. Housley were seized, originating from India and entering the county via JFK International Airport, continuing a combination of Carisoprodol, Tadalafil, and Sildenafil (PSR p. 7). Undercover buys of Tapentadol tablets were also purchased from a website associated with Mr. Housley (PSR p. 9).

Between the months of May 2021 and March 2022, investigators took custody of numerous parcels that had been seized by at JFK International Airport that contained purported Tapentadol and/or other substances. All the seized parcels were destined for addresses belonging to Mr. Housley and had a total net weight of 138.62 kilograms (PSR p. 16). A search warrant for a storage unit rented by Mr. Housley was searched and 11.85 kilograms of Tapentadol was located (making the total net weight 150.47 kilograms) (PSR p. 16).

Mr. Housley's distribution of Tapentadol resulted in the accidental death of victim J.K in June of 2021 (PSR p. 7-8).

### III.     Sentencing Under *Booker*

In *United States v. Booker*, 543 US 220 (2005), the Supreme Court adopted an approach to the Sentencing Reform Act that made the Sentencing Guidelines advisory. The *Booker* holding requires a sentencing court to consider guideline ranges, but it permits the court to "tailor the sentence in light of other statutory concerns as well, see § 3553". ,*Id*. at 245.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by *Booker*, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the Court to tailor the sentence in light of other statutory concerns as well, see § 3553(a). *Booker*, 125 S. Ct. at 757. Thus, under *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary goal in Section 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2. Section 3553(a)(2) states that such purposes are:

> (a). to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (b). to afford adequate deterrence to criminal conduct;
> (c). to protect the public from further crimes of the defendant; and
> (d). to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

> (a). The nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553[a][1]);
> (b). The kinds of sentences available (§ 3553[a][3]);
> (c). The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§ 3553[a][6]); and;
> (d). The need to provide restitution to any victims of the offense. (§3553[a][7]).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation".

Moreover, under 18 U.S.C. § 3661, no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as not ordinarily relevant to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1.

The Supreme Court has made clear that the district court must make an "individualized assessment" based on all the 3553(a) factors. *Gall v. United States*, 128 S. Ct. 586 (2007).

### IV.   Application of the Statutory Sentencing Factors to the Facts of this Case

Mr. Housley now requests that the Court consider the following factors in fashioning a sentence probation with home confinement, which is "sufficient, but not greater than necessary" to comply with 18 U.S.C. 3553(a).

///

///

### A. A downward variance and a sentence not to exceed probation with home confinement is sufficient, but not greater than necessary under 18 U.S.C. 3353.

Given Mr. Housley's acceptance of responsibility, his personal characteristics, minimal criminal history, and the fact that he is an unlikely candidate for recidivism, he respectfully requests this Court impose a sentence of probation with home confinement.

#### 1. Mr. Housley's acceptance of responsibility supports the requested sentence

Mr. Housley has taken full responsibility for his actions in this case in a manner that demonstrates both his respect for the law and his good character (*see e.g.,* PSR, p. 17). In timely pleading guilty, he has acknowledged his actions and that those actions will result in him being incarcerated and away from him family. In submitting himself to a term of incarceration, he has demonstrated his acceptance of responsibility and his respect for the law.

Additionally, in accepting responsibility for his actions, Mr. Housley acknowledges he may benefit from counseling. Mr. Housley has attended bi-weekly therapy sessions since 2002 which he believes has been beneficial (PSR p. 29). Should the Court deem mandatory counseling appropriate, he is more than willing to participate (PSR p. 29).

Those closest with Mr. Housley note he has committed a mistake he will "regret for the remainder of his life (Character Letters, attached hereto as Exhibit A, p. 2). A close friend, of over twenty years, Mr. Adrian Smith, has repeatedly witnessed Mr. Housley's remorse for the choices he has made. Mr. Smith indicates Mr. Housley appears truly sorry for the harm he has caused (Exhibit A, p. 7).

Mr. Housley has hopes for the future; he intends to explore various business opportunities with his best friend and business partner (Mr. Mendez) so that he can pass the businesses down to his sons for their financial wellbeing (PSR p. 28). Both Mr. Housley's timely guilty plea, submitting

himself to a significant prison sentence, as well as his acknowledgment of his need for counseling, evidence his acceptance of responsibility in this case.

**2. Mr. Housley has minimal criminal history and low chance of recidivism, warrants imposition of the requested sentence.**

Prior to the instant offense, Mr. Housley was a hard-working, educated, and law-abiding individual. At fifty-one (51) years of age, Mr. Housley's only prior criminal conviction was a misdemeanor for domestic violence in 2016, approximately 8 years ago (PSR p. 21).

Additionally, Mr. Housley was released on a personal cognizance bond with conditions on March 6, 2022. Having been on pretrial release for a period of nearly two years, Mr. Housley has been fully complaint with all conditions (PSR p. 6).

**a. Mr. Housley's minimal criminal history indicates he is not likely to recidivate**

Mr. Housley has minimal history and is not a likely candidate for recidivism. At fifty-one years of age, older offenders in criminal history category one, like Mr. Housley, have among the lowest rearrest rates.

Table 4. Rearrest Rates by Age at Release and Criminal History Category
Federal Offenders Released in 2010

| AGE | CRIMINAL HISTORY CATEGORY (CHC) | | | | | | |
|---|---|---|---|---|---|---|---|
| | CHC I | CHC II | CHC III | CHC IV | CHC V | CHC VI | TOTAL |
| Younger than 21 | 66.6% | 84.1% | 90.7% | 100.0% | 100.0% | 100.0% | 72.5% |
| 21 – 29 | 48.5% | 66.9% | 79.1% | 85.4% | 86.4% | 89.9% | 64.4% |
| 30 – 39 | 31.2% | 49.6% | 61.3% | 71.4% | 77.3% | 81.1% | 54.1% |
| 40 – 49 | 22.3% | 41.6% | 50.9% | 62.9% | 67.4% | 73.1% | 42.7% |
| 50 - 59 | 15.0% | 30.8% | 46.4% | 48.6% | 61.7% | 65.3% | 30.8% |
| 60 and Older | 9.4% | 18.2% | 28.1% | 30.0% | 48.6% | 46.9% | 15.9% |
| TOTAL | 30.2% | 49.4% | 61.9% | 70.3% | 75.4% | 76.2% | |

See Ex. B, U.S. *Sent'g Comm'n, Recidivism of Federal Offenders Released in 2010*, p. 30 (Sept. 2021).

Following *Booker*, reduced recidivism was quickly recognized as a ground for leniency in

7

sentencing older defendants given courts' duty to impose sentences that "afford adequate deterrence," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B), (C). *See, e.g., United States v. Lata*, 415 F.3d 107, 113 (1st Cir. 2005) (age and infirmity may be considered under Section 3553(a), especially if they diminish the risk of re-offending); *United States v. Hamilton*, 323 F. App'x 27, 2009 WL 995576 *3 (2d Cir. 2009) (unpublished) ("district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *United States v. Ruiz*, 2006 WL 1311982 at *4 (S.D.N.Y. May 10, 2006) (unpublished) (collecting cases imposing below-Guideline sentences based on reduced recidivism of defendants over 40).

Here, Mr. Housley presents an exceedingly low risk to re-offend, which further supports imposition of the requested sentence.

3. **Mr. Housley's personal characteristics warrant a sentence of probation with home confinement**

Prior to his involvement in the instant case, Mr. Housley was a hard-working, educated, law-abiding citizen and devoted father. Mr. Housley has a close-knit and supportive family. These personal characteristics shed light on who Mr. Housley is – a good man who should be judged by the totality of this life – not solely by his wrongdoing in the instant case.

a. **Mr. Housley maintains stable community ties and employment**

Mr. Housley moved to Clark County, Nevada from California in 2002 and has resided locally ever since (PSR p. 26). Mr. Housley purchased a Las Vegas residence in November of 2016 (PSR p. 27). Mr. Housley has a high school diploma, an Associates of Arts degree, a Bachelor's of science degree, and has completed two semesters towards a Master's degree (PSR p. 30).

Mr. Housley has maintained consistent employment to support his family. Mr. Housley is presently self-employed as a personal driver for athletes, celebrities, and hotel and casino patrons since June 2022 (PSR p. 30). In addition, Mr. Housley is also the co-owner of Cruise Control Daily

Rentals, a rental car company which he owns and operated with Mr. Melendez since March of 2023 (PSR p. 30). Mr. Housley also worked for Uber between June 2022 and April 2023 (PSR p. 30). Mr. Housley maintained long term employment as a bartender in Las Vegas between October 2012 and February 2020 (he was laid off when the business closed given the Covid-19 pandemic). Mr. Housley also maintained experience as a gaming/banquet bartender at various locations in Las Vegas between 2003 and 2013 (PSR p. 31).

### b. Mr. Housley is devoted and beloved father

Mr. Housley has one biological child, a son, F.H. (age seven) from a prior relationship with Ms. Jayde Mohammadi (PSR p. 26). Mr. Housley was awarded full custody of his F.H. in 2019 and has been his son's full-time caregiver and financial provider (PSR p. 26). Mr. Housley and his son share an extremely close relationship (PSR p. 6). Mr. Housley also cares for Ms. Mohammadi's other child (his non-biological son,) M.M. (age 12) as if he were his own since 2014 (PSR p. 27). M.M.'s biological father, Mr. Danny Melendez (Housley's business partner and best friend) maintains full legal custody of M.M. (PSR p. 27). However, M.M. resides with Mr. Housley approximately five days per week, continues to be actively involved in M.M.'s life, and the two share an extremely close relationship (PSR p. 27). As noted by the probation officer who located Mr. Housley's social media account, the account "is flooded with videos and images of [his] children, F.M. and M.M." (PSR p. 37).

The mother of the children is simply not a viable option to be a custodian for the children as evidenced by the fact that Chris was given sole legal and physical custody of F.H. in case D-18-575465-P since December 18, 2018. The only visitation that was allowed was supervised and that order has not been modified since the issuance. As this court is well aware, such an extreme remedy is almost unheard of in the Clark County Family Court's. Without getting into the sordid details as to the rationale of the Court's order (it is irrelevant to Mr. Housley's sentencing), the bottom line is

that there are no good options for the children's custody as Chris' parents are elderly, biological mom is unfit, and M.M.'s dad Danny has no standing over F.M.

Mr. Housley's parents repeatedly expressed how wonderful of a father he is to both F.H. and M.M. (PSR p. 27). Mr. Housley's "happiness is being a father." (PSR p. 27). Mr. Housley has been proactive in securing care of his child, indicating both his parents and his sister are prepared to care for him[1] (PSR p. 27). Mr. Housley has expressed his main priority that F.M. and M.M. not be separated and that they maintain close contact with their mother (PSR p. 27).



---

[1] The child's mother, Ms. Mohammadi is involved in the children's lives and "visits" with them, but she has never parented the children for consecutive days, let alone on a long-term basis (PSR p. 27).

Mr. Housley's parents repeatedly expressed how wonderful of a father he is to both F.H. and M.M. (PSR p. 27). Mr. Housley's "happiness is being a father." (PSR p. 27). Mr. Housley has been proactive in securing care of his child, indicating both his parents and his sister are prepared to care for him[2] (PSR p. 27). Mr. Housley has expressed his main priority that F.M. and M.M. not be separated and that they maintain close contact with their mother (PSR p. 27).



---

[2] The child's mother, Ms. Mohammadi is involved in the children's lives and "visits" with them, but she has never parented the children for consecutive days, let alone on a long-term basis (PSR p. 27).

### c. Mr. Housley has much family and community support

Mr. Housley maintains close contact with his parents, Stephen and Sandra Housley, and his older sister Shawn Powell who are all aware of the instant offense and remain extremely supportive (PSR p. 25-26).

Although Mr. Housley's parents, Stephen and Sandra do not condone his actions, they are extremely supportive (PSR p. 28). Stephen Housley informs the Court his son "is the type of person who will benefit society and others in far greater scale than if incarcerated." (PSR p. 28). Further, Mr. Housley's father states, "the scales of justice need to take into account all of the positives of his life, which are significant." (PSR p. 28). Stephen understands his son has made a terrible mistake, but hopes this Court weighs that he has lived an honorable existence and was a contributing member of society for many years until the instant case (Exhibit A, p. 2).



Mr. Housley's close friend and former neighbor, Mr. Russell Chun, describes Mr. Housley as a helpful man, often helping the elderly in the neighborhood with fixing things in their homes (Exhibit A, p. 4). Mr. Housley is a giving person, who often volunteers with local animal rescues (Exhibit A, p. 4). Mr. Chun recounts Mr. Housley as a full-time father who cares for not only his child, but his former step-son as well (Exhibit A, p. 4). Mr. Housley is an active father, always attending the children's school activities, sports and encouraging their hobbies (Exhibit A, p. 4). In Mr. Chun's eyes, Mr. Housley's life revolves around his children (Exhibit A, p. 4). Losing their father to incarceration would be devastating to both children (Exhibit A, p. 4).

Mr. Steven Marsh, a close friend of over sixteen years, describes Mr. Housley as a man of "integrity, compassion, responsibility, and true, unconditional love, both with his friends and family, namely his son Fox, and stepson, Maddox." (Exhibit A, p. 6). Mr. Marsh requests this Court consider the detrimental effect Mr. Housley's absence will have on those who depend on him most – his sons (Exhibit A, p. 6).

Mr. Housley and his son volunteer at a local pig sanctuary, Windy's Ranch and Rescue (PSR p. 28). Mr. Housley also volunteers with a local nonprofit dog rescue (PSR p. 28). Mr. Housley's giving nature is overwhelmingly demonstrated throughout the letters of support. *See generally* Exhibit A.

**4. The history behind Mr. Housley's involvement in this case**

In sharing how he became involved in the activity which comprises this case, Mr. Housley does not intend to dimmish the severity of his conduct and its effect upon society at large. However, in early 2020, Mr. Housley injured his shoulder and sought pain relief via the internet because he did not have health insurance (PSR p. 29). Subsequently, he learned he could, and began purchasing Tramadol and Tapentadol from online pharmacies located overseas (PSR p. 29). After a while, he became dependent on the drugs and began abusing them (PSR p. 29). Mr. Housley indicated he

ceased using either controlled substance in May of 2022 and his pretrial supervision drug tests confirm this to be true (PSR p. 29).

Additionally, having been a bartender in the Las Vegas casino industry for nearly two decades prior to Covid-19 pandemic, and having just accepted a new job prior to the pandemic beginning Mr. Housley found himself with two young sons to provide for without any prospects of employment (Exhibit A, p. 2). Mr. Housley was struggling to provide for his family when he made the wrong choice to obtain and pursue selling the substances at issue (Exhibit A, p. 2).

The PSR notes in Paragraph 177 that "the death of JK cannot and should not be minimized." Although tragic whenever someone loses a life, it is of great significance in this case to that the count regarding JK's death was not dismissed on a whim by the prosecution. After thoroughly evaluating the case and the facts of the case, the Government dismissed that count because they felt that at trial they could not prove the case beyond a reasonable doubt. Although Housley concedes that Tapendatol was sent to the decedent, the amount that was sent was nowhere near enough to cause the death or match the levels that were in the decedent's system at the time of the autopsy.

**B. Comparative sentencing warrants imposition of the requested sentence**

18 USC 3553 requires this Honorable Court to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See also Gall v. United States*, 128 S. Ct. 586, 600 (2007).

In considering recent sentencing data, during the last five fiscal years (FY2018-2022), there were 26 defendants whose primary guideline was §2S1.1, with a Final Offense Level of 39 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 26 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 151 month(s) and the median length of imprisonment imposed was 144 month(s). *See* PSR p. 42.

Considering the aforementioned statistics, Mr. Housley's personal characteristics and acceptance of responsibility along with his low risk of recidivism, a sentence substantially lower than that recommended by the PSR (and the guideline range) is in order.

**C. The Recommended Sentence Furthers Court Policy Statements**

This Honorable Court should vary from the PSR-guideline range, because the Sentencing Commission promulgated the base offense level contrary to "empirical data and national experience," *Kimbrough v. United States*, 552 U.S. 85, 109-10 (2007), and as a result, it recommends a sentence that is "greater than necessary, to comply with the purposes set forth" in 18 U.S.C. § 3553(a)(2).

Further, empirical research shows that "increases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." See, Ex. C, Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research, p. 28-29 (2006). This is because potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentence consequences in the manner one might expect of rational decision makers. *Id*.

According to the Justice Department, "[r]esearch shows clearly that the chance of being caught is a vastly more effective deterrent than even draconian punishment." *See United States v. Williams*, 2:13-cr-00221-APG-CWH, at *7 (D. Nev. Aug. 13, 2021) Citing National Institute of Justice, *Five Things About Deterrence* (May 2016); *see also* Valerie Wright, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment, The Sentencing Project*, at 1 (Nov. 2010) ("Research to date generally indicates that increases in the certainty of punishment, as opposed to the severity of punishment, are more likely to produce deterrent benefits."). *But see Length of*

*Incarceration and Recidivism*, United States Sentencing Commission, at 4 (April 2020) ("offenders incarcerated for more than 120 months were less likely to recidivate eight years after release"). *See United States v. Williams*, 2:13-cr-00221-APG-CWH, at *7 (D. Nev. Aug. 13, 2021).

Courts and justices have also recently observed that lengthy prison sentences have diminishing returns; each additional year essentially has less deterrent effect than the preceding year, due to various facts of human psychology, including time preference for the immediate in contrast to the attenuated. *See United States v. Craig*, 703 F.3d 1001, 1004 (7th Cir. 2012) ("every year added to the prospective sentence has a lesser deterrent effect than the preceding year of the sentence because it is added on at the end.").

Here, the increase in punishment based upon the application of rigid guidelines will not yield an increased deterrent effect to Mr. Housley or others. Simply standing before this Court facing the potential of a sentence of incarceration is deterrent effect enough for Mr. Housley whom has no felony criminal history. Thus, the guidelines here are a gross and inaccurate indicator of the appropriate sentence for Mr. Housley under § 3553 and this Court should impose the requested sentence; a term of probation with a period of home confinement.

## **CONCLUSION**

In this case, the recommended sentence serves the factors of 18 U.S.C. 3553(a). This sentence provides for an effective deterrent, respect of the law, and punishment for Mr. Housley adequately for his serious crime. As such, Mr. Housley respectfully requests this Court impose such a sentence.

DATED this 28th day of February, 2024

/s/ Jess R. Marchese, Esq.

JESS R. MARCHESE, ESQ.
Attorney for Defendant HOUSLEY

## CERIFICATE OF ELECTRONIC SERVICE

I HEREBY CERTIFY that on the 28th day of February, 2024, the undersigned served the forgoing **DEFENDANT'S SENTENCING MEMORANDUM** on all registered parties herein by causing a true copy thereof to be filed with the Clerk of Court using the CM/ECF system, which was served via electronic transmission by the Clerk of Courts pursuant to local order to the persons named below.

ROBERT KNIEF
United States Attorney's Office
District of Nevada
501 Las Vegas Blvd. South, Ste. 1100
Las Vegas, Nevada 89101

/s/ Jess R. Marchese
JESS R. MARCHESE, ESQ.